## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**JAMES F. LEWIS,**

> **Plaintiff,**

**v.**                                                    **Case No: 5:24-cv-13-MMH-PRL**

**BRADLEY ARNOLD, RANDY
MASK, OREN MILLER, GARY
SEARCH, DOUG GILPIN, GARRY
BREEDEN, CRAIG ESTEP,
SAMANTHA DALEY, SHARON
CARRUTHERS, RACHEL BAGGETT,
LESLIE SMITH, JOHN KNIGHT, and
SHANNON VOSS,**

> **Defendants.**

---

### REPORT AND RECOMMENDATION[1]

In May 2021, the plaintiff, James F. Lewis, visited a Sumter County government building. During his visit, he requested public records and video-recorded his interactions with various employees. He was ultimately issued a trespass warning by law enforcement officers for attempting to enter a restricted area and advised that he would be trespassed if he returned to the building. Plaintiff, proceeding *pro se*, filed this action alleging that the County employees and law enforcement officers with whom he interacted violated—and conspired with the other Defendants to violate—his rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution, the Florida Constitution, and state law.

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Upon referral, this matter is before me for consideration of two motions to dismiss. The first motion is filed by the Sumter County Florida County Administrator (Bradley Arnold); employees of the Sumter County Tax Collector (Defendants Rachel Baggett, Samantha Daley, and Sharon Caruthers); the Sumter County Florida County Commissioners (Defendants Oren Miller, Gary Search, Garry Breeden, Doug Gilpin, and Craig Estep); the Sumter County Tax Collector (Defendant Randy Mask); and the Sumter County Records Management Liaison Officer (Leslie Smith) (collectively referred to as the "County Defendants"). (Doc. 68). The second motion is filed by Defendants Shannon Voss[2] and John Knight of the Sumter County Sheriff's Office (collectively referred to as the "SCSO Detectives"). (Doc. 46). Plaintiff filed responses (Docs. 67, 73). For the reasons discussed below, I submit that the motions to dismiss should be granted and Plaintiff should be permitted to file an amended complaint setting forth one very narrow constitutional claim, if he can do so in good faith.

## I.    BACKGROUND

This case arises from events that occurred on May 6, 2021, and May 7, 2021, at The Villages-Sumter County Service Center located at 7374 Powell Road, Wildwood Florida. The building contains a public library, Tax Collector's lobby and offices, Supervisor of Elections lobby and offices, County Commissioners' offices, a Veterans Assistance office, a conference room, and employee offices.

---

[2] Detective Voss was formerly known as Detective Hart.

## A. Plaintiff's Allegations[3]

According to Plaintiff's Second Amended Complaint ("SAC"), he went to the building to "gather matters of public interest, request public record[s] and to video record the actions of public servants in the course of their duties." At his first visit on May 6, 2021, he requested public records, but an unidentified Sumter County employee called 911 to falsely report that he was causing a verbal disturbance. Plaintiff claims that a Sumter County Sheriff's Deputy and two Wildwood, Florida Police Officers arrived but found no evidence of any disturbance by Plaintiff.

Plaintiff returned the next day (May 7, 2021) to again request public records. He alleges that he was rudely accosted in the general lobby area by Defendant Daley who "maliciously and falsely" accused him of trying to enter a restricted area. Plaintiff alleges that Daley denied him his right to public records and refused to identify herself as a Sumter County employee and that Defendant Caruthers further denied him access to public records and verbal requests for public records. Plaintiff alleges that Defendant Arnold called Sumter County Sheriff's dispatch and falsely reported that he was trespassing. Defendants Voss and Knight, both of whom are Sumter County Sheriff's Deputies, arrived and stated that Arnold had filed an official complaint to have Plaintiff trespassed from the building for trying to enter a restricted area. Plaintiff alleges that he was detained by Voss, Knight, and Velez and given a verbal trespass warning.[4] He was advised that he would be arrested for trespassing if he returned.

Plaintiff also purports to allege a conspiracy amongst all Defendants to have him trespassed. He alleges that on May 6, 2021, Arnold notified and enlisted into the conspiracy

---

[3] These background facts are taken directly from Plaintiff's second amended complaint (Doc. 39) and are taken as true for purposes of these motions to dismiss.

[4] Plaintiff voluntarily dismissed his claims against Deputy Velez on May 14, 2024. (Docs. 74, 76).

his supervisors, the Sumter County Florida County Commissioners—Defendants Miller, Search, Breeden, Gilpin, and Estep—as well as the Sumter County Tax Collector, Defendant Mask, by emailing that he was going to "issue a no trespass" to Plaintiff if he returns to request public records. Plaintiff alleges that Mask joined the conspiracy by replying to Arnold's email, "Ok great . . . Thanks!" And that Mask enlisted Daley and Caruthers, both of whom joined the conspiracy by agreeing to contact Mask or Arnold "ASAP" if Plaintiff returns to request public records. According to Plaintiff, Mask furthered the conspiracy by notifying Arnold that "We do have his name." Plaintiff alleges that Mask and Baggett had unreasonably searched and seized Plaintiff's name and phone number which was not a public record. Plaintiff alleges that Arnold furthered the conspiracy by requesting Plaintiff's name from Mask and then enlisted Smith into the conspiracy to search for Plaintiff's address.

### B. Video Footage

Defendants have also filed a video containing footage of the incident filmed by Plaintiff on May 7, 2024. The video is entitled "A GENTLEMAN's DAY OUT PART 2 UNEDITED, THE SECOND DAY," and is filed as Exhibit 1 to Doc. 46.

A district court must generally limit its consideration of a motion to dismiss the pleadings and any exhibits attached to it. *Grossman v. Nationsbank, N.A.,* 225 F. 3d 1228, 1231 (11th Cir. 2000). If the parties present, and the court considers, evidence outside the pleadings, the motion to dismiss must be converted into a motion for summary judgment. *Finn v. Gunter*, 722 F. 2d 711, 713 (11th Cir. 1984).

However, there are two exceptions to this rule of conversion: (1) the incorporation by reference doctrine and (2) judicial notice. *Tellabs, Inc. v. Makor Issues & Rtds., Ltd.*, 551 U.S. 308, 322 (2007). Under the incorporation-by-reference doctrine, a court may consider

evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) "the plaintiff refers to certain documents in the complaint," (2) those documents are "central to the plaintiff's claim," and (3) the documents' contents are undisputed. Horsley v. Feldt, 304 F. 3d 1125, 1134 (11th Cir. 2002). Recently, the Eleventh Circuit held that even if a document is not referred to in the complaint, it can be considered under the incorporation-by-reference doctrine sot long as the other two requirements are met. Johnson v. City of Atlanta, Case No. 22-11359, 2024 WL 3384936, * (11th Cir. July 12, 2024). Evidence is "undisputed" in this context if its authenticity is unchallenged. Id. While the rule traditionally has applied to documentary evidence, the Eleventh Circuit has expanded its application to video footage as well. *Baker v. City of Madison*, *Alabama*, 67 F. 4th 1268, 1277 (11th Cir. 2023).

In the SAC, Plaintiff alleges that he has "proof of his allegations" which include "emails, phone records and unedited video evidence." (Doc. 39 at ¶33). Plaintiff does not dispute that the video footage is authentic and that its contents are central to his claims.[5] Accordingly, the Court finds that the video is incorporated by reference. Where video footage has been incorporated-by-reference, a court is not required to accept a Plaintiff's allegations as true if they are clearly contradicted by the video footage. *Pourmoghani-Esfahani v. Gee*, 625 F. 3d 1313, 1315 (11th Cir. 2010). This is because courts need not rely on "visible fiction." *Scott v. Harris*, 550 U.S. 372, 381 (2007). Instead, if the video footage that has been incorporated-by-reference in a complaint shows a plaintiff cannot state a cause of action, a motion to dismiss is properly granted. *Baker*, 67 F. 4th at 1282.

---

[5] While Plaintiff does not challenge the incorporation of this video evidence, he does note that he has additional evidence to support his claims.

Upon review, the Court finds the video footage generally consistent with the limited factual allegations of the complaint. However, the video provides significantly more detail. It plainly depicts Plaintiff's interactions with two County Defendants that day (Caruthers and Daly), as well as some other unnamed County employees. As Plaintiff approached the door of the Tax Collector's Office, Plaintiff told Caruthers that he "need[ed] to get in there" to look at pamphlets displayed on the wall. (3:32). Caruthers advised Plaintiff that he could not enter the Office because he did not have an appointment. Caruthers offered to make Plaintiff an appointment. And while he initially agreed and began to walk with Caruthers toward the front lobby, Plaintiff changed his mind and declared that "[he] would just go get [the pamphlets]" himself. (5:30). Plaintiff subsequently returned to the lobby area outside of the Tax Collector's Office and when he walked towards the open door to the Office, Daley blocked his way and advised him that he could not enter the Office. (12:30). Daly explained that it was a private space where their employees worked. (12:40). Plaintiff again told Daley that he wanted to get in the Office for pamphlets and when she refused, he asked, "it's not open to the public?" (13:20).

The video footage also depicts numerous verbal public records requests that Plaintiff made during his visit on May 7, 2021. Plaintiff made demands for copies of the policy that limited office access to individuals with appointments (4:13), and he also demanded the names of various employees, as well as their employee numbers and their salary information (7:20, 8:00, 8:30, 11:14, 12:40, 13:36, 14:00). The video footage confirms that Plaintiff was not prevented from making public record requests and that no responses were provided.

The footage also depicts Plaintiff's encounter with Detectives Voss and Knight, who advised Plaintiff that Arnold had filed a complaint requesting that Plaintiff be trespassed for

trying to enter an office without permission. They advised Plaintiff that he was being trespassed. During his interactions with the Detectives, Plaintiff received conflicting information about whether he was being detained. Ultimately, the SCSO Detectives turned the matter over to the Wildwood Police Department who issued a verbal trespass warning.

### C. Claims Alleged

Lewis filed his initial Complaint (Doc. 1) on January 8, 2024, but it was stricken by the Court as an impermissible "shotgun pleading." (See Doc. 6 at 7). On February 12, 2024, Lewis filed his Amended Complaint (Doc. 19), which he subsequently amended to correct the names of two defendants. (Doc. 39; see also, Doc. 33 at 1). Plaintiff's second amended complaint attempts to assert eight counts. (Doc. 39).

Count I is brought against all defendants (except Smith) and seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of the First Amendment, Fourteenth Amendment, Florida Constitution, and Florida law. Count II is brought against all Defendants pursuant to § 1983 for alleged violation of the Fourteenth Amendment's substantive component and Equal Protection clause. Count III is another § 1983 claim against all Defendants for alleged violation of the Fourth Amendment through unlawful search/seizure. Count IV is brought against Defendants Arnold, Mask, Daley, Caruthers, Baggett, Smith, Miller, Search, Breeden, Gilpin, and Estep pursuant to § 1983 for an alleged conspiracy to violate civil rights (also with mention of gross negligence). Count V is § 1983 claim for unconstitutional policy, custom, or procedure pursuant to *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658 (1978) brought against Defendants Arnold, Mask, Miller, Breeden, Search, Gilpin, and Estep as policy makers for Sumter County, Florida. Count VI is another § 1983 claim Defendants Arnold, Mask, Miller, Breeden, Search, Gilpin, and Estep for the alleged failure to train, supervise,

discipline, or correct pursuant to *City of Canton v. Harris*, 489 U.S. 378 (1989). Count VII is brought against all Defendants and purports to assert a claim for intentional infliction of emotional distress, with mention of First, Fourth, and Fourteenth Amendment violations and state laws. Count VIII is another § 1983 claim against all Defendants for alleged deprivation of (unspecified) rights under color of law with reference to First, Fourth, and Fourteenth Amendment violations and allegations of conspiracy.

## II.   LEGAL STANDARD

The bare minimum a plaintiff must set forth in his complaint is found in Fed. R. Civ. P. 8. Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has explained, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that while particularity is not required under Fed. R. Civ. P. 8, as it is under Fed. R. Civ. P. 9, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal

quotation marks omitted). In short, to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Iqbal* and *Twombly*. First, the court will "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Then, "where there are well-pleaded factual allegations," the court will "'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

In applying this two-step approach to determine the complaint's sufficiency under Rule 8 (and in turn the plausibility of the claims), the Eleventh Circuit limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Further, the Court can infer "'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682) (brackets omitted). Finally, a complaint is also subject to dismissal under Rule 12(b)(6) "when its allegations on their fact, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).

### III.   Discussion

#### A. Shotgun Pleading

The Court struck Plaintiff's initial complaint as a shotgun pleading and because it failed to comply with Rules 8 and 10, Fed. R. Civ. P. (Doc. 6). Despite detailed instruction

from the Court in its earlier Order (Doc. 6), Plaintiff's SAC is still an improper shotgun pleading.

The Eleventh Circuit has identified four categories of shotgun pleadings: (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial fact not obviously connected to any particular cause of action; (3) a complaint that does not separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions. *Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1321-23 (11th Cir. 2015). According to the Eleventh Circuit, "the unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id* at 1323. The SAC runs afoul of several of these categories.

Presumably in efforts to address the Court's concern that the initial Complaint improperly adopted allegations of all preceding counts, the SAC does not incorporate any "facts" from the "Statement of Facts" or prior allegations into any of the Counts. Thus, it is unclear what factual allegations support what claims. Moreover, the SAC continues to combine different claims for relief against different Defendants without alleging what claims are asserted against which Defendant for what conduct.

For example, Count I is brought against all Defendants (except Smith) and seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of the First and Fourteenth Amendments to the United States Constitution, as well as the Florida Constitution, 18 U.S.C. § 242, and unspecified state laws. The SAC vaguely refers to "[a]ll of the acts complained of herein,"

and "[e]ach of the aforementioned acts by each Defendant." The Court is left to guess which "facts" set forth in the "Statement of Facts," support the varied claims included in Count I. These same issues repeat themselves throughout the other Counts.

In addition, while only Counts IV and VIII are alleged explicitly as conspiracy claims, conspiracy allegations permeate the entire SAC. Indeed, it appears that Plaintiff's primary theory in the case is that Defendants conspired to have him trespassed for making public record requests. However, it is unclear whether he is alleging in every count that Defendants should be responsible together under some theory of conspiracy, or whether he is alleging in some counts that each Defendant individually violated his rights.

Finally, in several of the Counts it is unclear whether Plaintiff is asserting duplicative claims for relief or attempting to assert different claims based on similar rights. For example, Count IV purports to allege a claim for conspiracy to violate civil rights against the County Defendants and Count VIII appears to assert a claim for conspiracy to violate civil rights against the County Defendants and the SCSO Detectives. Both counts reference the First, Fourth, and Fourteenth Amendments of the United States Constitution, Florida Constitution, 18 U.S.C. §241 and unspecified state laws.

Typically, the Court would dismiss the SAC at this point for failure to state a claim to which the Defendants could respond, however, because the Defendants also addressed the merits the Court will review those arguments as well.

### B.  Constitutional Claims

Plaintiff purports to allege various constitutional claims under 42 U.S.C. § 1983. Any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. A plaintiff may recover for a violation of his constitutional rights pursuant to § 1983 under a theory of individual liability or governmental liability. It is well established that government agents are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To establish personal liability against a government agent for a constitutional wrong the facts alleged by Plaintiff must contain sufficient allegations to show that the individual *personally participated* in the alleged constitutional violation. *See, e.g.*, *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).

As an initial matter, the SAC fails to include any factual allegations to show that Defendants Miller, Search, Gilpin, Breeden, and Estep personally participated in any alleged constitutional violation. Nevertheless, Plaintiff attempts to loop them into the purported conspiracy by alleging that Defendant Arnold "notified and enlisted" them into the conspiracy by sending an email stating that Arnold was going to "issue a no trespass" to Plaintiff if he returned. (Doc. 39 at ¶ 25). However, there are no allegations that any of these Defendants received the email, responded to the email, or otherwise took any action showing that they joined or participated in the conspiracy. Accordingly, Plaintiff's claims against Miller, Search, Gilpin, Breeden, and Estep should be dismissed for failure to state a claim.

## 1. First Amendment

Here, Plaintiff alleges that he was engaged in protected First Amendment conduct— i.e., filming and requesting public records in a "designated public forum open to the public"— but that the County Defendants "chilled and deterred such expression" and took actions to

"intimidate and silence Plaintiff." According to the SAC (and as confirmed by the incorporated video footage), Plaintiff had contact with two County Defendants on May 7, 2021, Daley and Caruthers. The SAC alleges that Daley "rudely accosted" and falsely accused Plaintiff of trying to enter a restricted area, and denied his right to public records, public record requests, and refused to identify herself as a Sumter County employee. As to Caruthers, it alleges that she denied Plaintiff access to public records and verbal requests for public records. The SAC also alleges that Arnold falsely reported to the Sumter County Sheriff's Dispatch that Plaintiff was trespassing and requested that he be trespassed from the building for trying to enter a restricted area.

Plaintiff's First Amendment argument is based on his position that the government building at issue is "a designated public forum open to the public." However, "'public place' and 'public forum' are not synonymous; indeed, "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Watkins v. U.S. Postal Employee*, 611 Fed. Appx. 549, 552 (11th Cir. 2015) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 799-800 (1985)). For purposes of First Amendment analysis, the Supreme Court has identified three types of government-owned property: the traditional public forum, the designated forum, and the nonpublic forum. *United States v. Kokinda*, 497 U.S. 720, 726-27 (1990). A traditional public forum, such as a street or park, is one that has as "a principal purpose ... the free exchange of ideas." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. 788, 800 (1985). A designated public forum is one which the government intentionally opens to the public for expressive activity. *Id.* Government limitations on

expressive activity in traditional public fora and designated public fora are subject to strict scrutiny; they must be narrowly tailored to serve a compelling state interest. *Id.* By contrast, "[a] nonpublic forum is 'public property which is not by tradition or designation a forum for public communication,'" and limits on access to such a forum must meet only a reasonableness standard. *Crowder v. Housing Authority of Atlanta,* 990 F.2d 586, 591 (11th Cir.1993) (quoting *Perry Educ. Assoc. v. Perry Local Educators' Assoc.* 460 U.S. 37, 46 (1983)).

Here, the incorporated video footage shows that the events related to Plaintiff's First Amendment claims occurred in the lobby in front of the Tax Collector's Office as well as the central lobby of the building. Courts have consistently found that the interior of government buildings—like the one in this case—are nonpublic fora. *See e.g., Watkins*, 611 F. App'x at 551-52 (U.S. Post Office lobby was a nonpublic forum and postal employee could lawfully remove plaintiff for singing in the lobby); *United States v. Gilbert*, 920 F.2d 878, 884 (11th Cir. 1991) ("no question" that the interior of federal building was a nonpublic forum, and portico area of federal building was also not a public forum); *Dewitt v. Haney*, Case No. 4:21-cv-340-AW-MAF, 2023 WL 2731865, at *2 (N.D. Fla. Mar. 31, 2023) (probation office's lobby was not a public forum); *Gay Guardian Newspaper v. Ohoopee Reg'l Libr. Sys.,* 235 F. Supp. 2d 1362, 1369 (S.D. Ga. 2002), aff'd, 90 F. App'x 386 (11th Cir. 2003) (a public building's front lobby is typically considered a nonpublic forum); *Freedom Found. v. Wash. Dept. of Ecology*, 426 F. Supp. 3d 793, 799-803 (W.D. Wash. 2019), aff'd, 840 F. App'x 903 (9th Cir. 2020) (lobby of Washington Department of Ecology was a nonpublic forum and noting that the Eighth, Second, and Eleventh Circuits have held that a government agency lobby is a nonpublic forum); *Lavite v. Dunstan*, 932 F.3d 1020, 1029 (7th Cir. 2019) (county administration building that housed over 20 county departments was a nonpublic forum); *Make the Road by Walking,*

*Inc. v. Turner*, 378 F.3d 133, 145-46 (2d Cir. 2004) (welfare office waiting rooms were nonpublic fora); *Fams. Achieving Indep. & Respect v. Neb. Dept. of Social Servs.*, 111 F.3d 1408, 1419 (8th Cir. 1997) (department of social services lobby was a nonpublic forum). As a nonpublic forum, the government can restrict access even for protected First Amendment activity so long as the restrictions are reasonable and viewpoint neutral. *See Watkins v. U.S. Postal Employee*, 611 Fed. Appx 549, 552 (11th Cir. 2015).

Here, although not directly challenged by Plaintiff, the Court notes that it is entirely reasonable for the Tax Collector to limit access to his Office to those individuals with appointments, a restriction that is viewpoint neutral. Indeed, the Supreme Court has noted that a government "workplace, like any place of employment, exists to accomplish the business of the employer," and thus, "[i]t follows that the Government has the right to exercise control over access to the [government] workplace in order to avoid interruptions to the performance of the duties of its employees." *Id.* at 805-06. Accordingly, denying Plaintiff service at the Tax Collector's Office because he did not have an appointment did not violate any of his rights under the First Amendment.

Moreover, Plaintiff has cited no case (and the Court is unaware of any case) suggesting that Plaintiff has a statutory or constitutional right to verbally demand "public records requests" from employees in the non-public areas. Indeed, the government is permitted to limit requests that disrupt orderly and efficient government operations and interrupt the performance of the duties of its employees. And even if Plaintiff was entitled to make the verbal public record requests, the County Defendants did not violate any of Plaintiff's rights

by not providing responses on the spot, as there is no statutory or constitutional right to an immediate response to such requests.[6]

Finally, Arnold did not violate Plaintiff's First Amendment rights by having him trespassed. Under Fla. Stat. §810.08, Arnold was permitted to authorize law enforcement to issue Plaintiff a trespass warning for attempting to enter a restricted area. Plaintiff's conclusory allegations that he was not actually trespassed for attempting to enter the Tax Collector's Office—but rather, in retaliation for making public record requests—is refuted by the incorporated video footage. Indeed, the video plainly shows that Plaintiff was trespassed after he was advised by Caruthers that he could not enter the Tax Collector's Office without an appointment, he refused to schedule an appointment with the Tax Collector (to see the pamphlets displayed on the wall in his office), and instead, threatened to get the pamphlets himself. The video also shows that despite being advised by Caruthers that he needed an appointment, Plaintiff told Daley that he wanted to get in the Office for pamphlets and when Daley refused, he asked, "it's not open to the public?" (13:20). The fact that Arnold had previously sent an email to co-workers advising that he would trespass Plaintiff if he returned to the building, does not change the clear video evidence showing that Plaintiff's own conduct—i.e., refusing to follow the procedure to enter the Tax Collector's Office, threatening to enter on his own, and continuing to question the policy—supported the trespass warning.[7]

---

[6] Florida law requires only that a custodian of public records "acknowledge requests to inspect or copy records promptly and respond to such requests in good faith." Fla. Stat. § 119.07(1)(c). The law allows agencies a reasonable time during which to make "reasonable efforts to determine from other officers or employees within the agency whether such a record exists and, if so, the location at which the record can be accessed," and to determine whether "all or part of the record is exempt from inspection and copying." *Id.* at (c), (d).

[7] Because Plaintiff has failed to allege any violation of his First Amendment right by the County Defendants, any claim that they conspired to violate his First Amendment rights also fails. Moreover, it is worth noting that under the intra-corporate conspiracy doctrine, "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot

Likewise, Plaintiff's allegations regarding the SCSO Detectives do not support a First Amendment violation. The SAC simply alleges that Voss and Knight responded to a report that Plaintiff was trespassing; Voss and Knight told Plaintiff that Arnold had filed an official complaint and wanted Plaintiff trespassed from the building for trying to enter a restricted area; and Voss and Knight detained Plaintiff based on Arnold's complaint without any investigation or proof of criminal activity. (Doc. 39 at ¶¶20-22). Thus, according to Plaintiff's own allegations (and as confirmed by the incorporated video footage), the SCSO Detectives acted solely on a report that Plaintiff should be trespassed for trying to enter a restricted area.

Under Florida law, the complaint filed by Arnold justified the issuance of a trespass warning, without the Detectives conducting an independent investigation or otherwise seeking proof. *See Gestewitz v. State*, 34 So. 3d 832, 834-35 (Fla. 4t DCA 2010) ("[A] police officer . . . may issue a trespass warning for unauthorized entrance into a structure" at the request of "a 'person authorized 'to issue a trespass warning."). The limited actions taken by the SCSO deputies did not violate any rights that Plaintiff may have had under the First Amendment.

---

conspire among themselves." *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir.2000) (en banc). The doctrine applies to public entities such as the County and its personnel. *See e.g., Rehberg v. Paulk,* 611 F.3d 828, (11th Cir. 2010) (applying intra-corporate conspiracy doctrine to district attorney, specially appointed prosecutor, and chief investigator for district attorney's office); *Denney v. City of Albany,* 247 F.3d 1172, 1190 (11th Cir.2001) (applying intra-corporate conspiracy doctrine to city, city fire chief, and city manager); *Dickerson v. Alachua County Comm'n,* 200 F.3d 761, 768 (11th Cir.2000) (rejecting employee's § 1985(3) claim on that basis where employee alleged civil conspiracy among solely County employees). Here, Plaintiff alleges that the "conspiracy" to trespass him for making public record requests occurred only within a government entity—i.e., Sumter County.

### 2. Fourth Amendment

Next, Plaintiff alleges that he suffered a violation of his Fourth Amendment rights to be free from unreasonable searches and seizures. A seizure under the Fourth Amendment occurs when an officer, by means of physical force or show of authority terminates or restrains a person's freedom of movement through means intentionally applied. *Chandler v. Secretary of Fla. Dept. of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012). A Fourth Amendment search occurs upon intrusion into an individual's private sphere in which the individual seeks to preserve something as private and has an expectation of privacy that society is prepared to recognize as reasonable. *Carpenter v. United States*, 585 U.S. 296, 424 (2018).

As to the County Defendants, the SAC is devoid of any facts suggesting that they "seized" Plaintiff. And the only purported "search" that occurred was Mask and Baggett allegedly "willfully but unreasonably searched" Plaintiff's name and phone number which was not a public record. (Doc. 39 at ¶ 28). Plaintiff's general legal assertion that the search was "unreasonable" is entirely speculative. And while Plaintiff provided no further detail on how the search was allegedly conducted, obtaining Plaintiff's name and telephone number from government records or third-party corporate records is not a Fourth Amendment search. Indeed, in order "[t]o prevail on a claim that a search or seizure violated the Fourth Amendment, a [party] must show as a threshold matter that he had a legitimate expectation of privacy in the place or item searched." *Berry v. Federal Bureau of Investigation,* Nos. 18-1926, 18-1954, 2020 WL 13065178, *1 (1st Cir. Feb. 27, 2020).

Here, other than a general assertion that his name and telephone number were not a public record, Plaintiff has failed to allege any facts suggesting that he had a legitimate expectation of privacy in that information. *See Carpenter*, 585 U.S. at 308 (2018) ("a person

has no legitimate expectation of privacy in information he voluntarily turns over to third parties . . . even if the information is revealed on the assumption that it will be used only for a limited purpose."); *Berry*, 2020 WL 13065178 at 2 (plaintiff failed to show that he had any legitimate expectation of privacy in his cell phone number and his parents' identity, telephone number, and address). Accordingly, Plaintiff has failed to allege any claim for an unreasonable search and seizure under the Fourth Amendment as to the County Defendants.

As to the SCSO Detectives, the SAC alleges they that they detained Plaintiff based on the "fabricated complaint of trespassing by Arnold," and without any investigations or proof of any criminal activity. (Doc. 39 at ¶22). However, as discussed above, the Detectives properly issued a trespass warning based solely on the complaint filed by Arnold—they were not required to independently investigate whether Plaintiff was in fact trespassing. *See Gestewitz v. State*, 34 So. 3d 832, 834-35 (Fla. 4th DCA 2010) ("[A] police officer . . . may issue a trespass warning for unauthorized entrance into a structure" at the request of "a 'person authorized 'to issue a trespass warning.'").

Although not specifically alleged in the SAC, Plaintiff argues in his papers that the SCSO Detectives unlawfully detained him while processing the trespass warning, in violation of the Fourth Amendment's prohibition against unreasonable seizures. (Doc. 67 at 19-21).

Under the Florida trespass statute, a police officer may issue a trespass warning for unauthorized entrance into a structure but does not have the legal authority to conduct an investigatory stop or arrest for trespass unless the owner or his agent first warned the potential trespasser. *See* § 810.08(1), Fla. Stat. (2006); *S.N.J. v. State,* 17 So.3d 1258, 1259 (Fla. 2d DCA 2009) (stating that Florida's criminal trespass statute "requires that notice be given before a person can be guilty of trespassing on property," and that individuals "c[an] be legally

detained for trespassing only if they were first warned to leave the property"); *Gestewitz,* 34 So.3d at 834–35(observing that officers illegally detained a defendant when they told him that he was not free to leave until they processed his trespass warning).

Here, the incorporated video footage shows that Plaintiff was given conflicting information about whether he was detained while the trespass warning was being processed. Plaintiff points to the section of the video in which he asked "Am I being detained? (23:04), to which Voss responded "Yes" and Knight said, "Yes, until you get your warning."[8] Defendants focus on an excerpt less than a minute later when Detective Knight explained the status of the call to Plaintiff and Plaintiff asked, "So, I'm being --," to which Detective Knight responded, "No, you can leave. You're welcome to leave." (23:51-24:07). Because Plaintiff was advised at one point that he was being detained while law enforcement processed his trespass warning, the Court cannot say that Plaintiff cannot state a claim for an unreasonable seizure under the Fourth Amendment against the SCSO Detectives.

### 3. Fourteenth Amendment

Plaintiff purports to seek relief under the Fourteenth Amendment for violations of substantive due process of law and equal protection of the law. The Fourteenth Amendment prohibits States and their components from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[T]he Due Process Clause was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998) (internal citations omitted).

---

[8] While Knight's response is hard to hear on the recording, Plaintiff claims that it is clearly shown at the 00:31 minute mark on Velez's body cam video, that he filed in support of his response to the motion to dismiss. (Doc. 67 at 19-20).

The Eleventh Circuit has emphasized that Court must "exercise the utmost care" when it considers claims about substantive due process. *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1329 (11th Cir. 2020) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). Substantive due process is a legal concept "untethered from the text of the Constitution," so "the Supreme Court has been reluctant to expand" its scope. *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019) (internal quotation marks omitted).

Substantive due process prohibits government conduct that "shocks the conscience." *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1375 (11th Cir. 2002) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998)).   The Eleventh Circuit has repeatedly made clear that only a very narrow range of governmental conduct will "shock the conscience" and "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Waddell, 329 F.3d at 1305. The Eleventh Circuit has explained that "a substantive due process violation would, *at the very least*, require a showing of deliberate indifference to an extremely great risk of serious injury to someone in [Plaintiff's] position." *Waddell,* 329 F.3d 1300, 1305 (11th Cir. 2003).   (emphasis added).

Here, Plaintiff alleges in a conclusory manner that "the complained of act of each and every Defendant was "shocking to the conscience, beyond the bounds of acts tolerable in a civilized society, and so egregious and outrageous that they may fairly be said to shock the contemporary conscience." (Doc. 39 at ¶42). Specifically, Plaintiff then alleges that Defendants caused him harm by filing false police reports and complaints as he was trying to request public records and video his encounters with public servants; and by detaining him based upon a fabricated complaint. (Doc. 39 at ¶43). Clearly, these allegations fail to suggest

that Defendants acted with deliberate indifference to an "extremely great risk of serious injury."

Plaintiff has not identified, nor is the Court aware of any case in the Eleventh Circuit in which words alone—without violent physical battery—have been found to "shock the conscience." Indeed, a court in the Southern District of Florida recently noted that the "only two published decisions in which the Eleventh Circuit **has** found that a defendant's conduct 'shocked the conscience' involved violent and intentional physical assaults by teachers against children." *625 Fusion, LLC v City of Fort Lauderdale*, 526 F.Supp.3d 1253, 1271 (S.D. Fla. 2021).[9] Accordingly, even reviewing the second amended complaint in the light most favorable to Plaintiffs, Defendants' alleged conduct is not so outrageous as to "shock the conscience" and state a substantive due process claim.

And to the extent that Plaintiff is attempting to plead an equal protection claim, he has failed to allege that he was treated differently from other similarly situated individuals—an allegation that is essential to an equal protection claim. *Austin v. City of Montgomery*, 353 F. App'x 188, 191 (11th Cir. 2009) ("To properly plead an equal protection claim, a plaintiff must allege that, through state action, similarly situated persons are treated disparately.").

Accordingly, Plaintiff's claims under the Fourteenth Amendment should be dismissed.

### 4.  State Law Claims

Plaintiff purports to allege violations of state law in each of his claims brought pursuant to §1983. However, there is no state-law analogue to § 1983 for alleged violations of the

---

[9] These two cases in which the Eleventh Circuit found a substantive due process violation included: *Kirkland ex rel. Jones v. Greene Cty. Bd. of Educ.*, 347 F.3d 903, 905 (11th Cir. 2003), in which a teacher repeatedly struck a thirteen-year old student with a metal cane, including once on the head as he doubled over protecting his chest, when he was not armed or physically threatening in any way; and *Neal ex. Rel. Neal v. Fulton Cty. Bd. Of Educ.*, 229 F.3d 1069 (11th Cir. 2000), when a high school coach struck a student in the face with a metal lock and dislodged his eye.

Florida Constitution. *Youngblood v. Fla. Dept. of Health*, 224 F. App'x 909, 913 n. 4 (11th Cir. 2007). And violations of state law cannot be the basis for § 1983 claims. *Youngblood v. Fla.*, Case No. 3:01-cv-1449-J-16MCR, 2005 WL 8159645, at *6 (M.D. Fla. Mar. 17, 2005). Accordingly, Plaintiffs' claims for violations of state law in Counts I, II, III, IV, V, VI, and VIII should be dismissed.

The only specific Florida-law claim identified in the SAC is for "Infliction of Emotional Distress" in Count VII. As an initial matter, it is unclear whether Plaintiff is asserting a claim for intentional or negligent infliction of emotional distress. Either way, Plaintiff has failed to sufficiently allege a claim.

With respect to a claim for the intentional infliction of emotional distress, "in Florida, the plaintiff must allege conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mundy v. Southern Bell Tel. and Tel. Co.*, 676 F.2d 503, 505 (11th Cir. 1982). "The standard for 'outrageous conduct' is particularly high in Florida." Patterson v. Downtown Med. & Diagnostic Ctr., Inc., 866 F. Supp. 1379, 1383 (M.D. Fla. 1994); see also Merrick v. Radisson Hotels Int'l, Inc., No. 8:06-cv-01591-T-24TGW, 2007 WL 1576361, at *4 (M.D. Fla. May 30, 2007) (characterizing Florida's standard for intentional infliction of emotional distress claims as "extremely high."). "It is not enough that the intent is tortious or criminal; it is not enough that the defendant intended to inflict emotional distress; and it is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort." *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1213 (Fla. 5th DCA 1995); *see also Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015). Whether conduct meets this exceedingly high standard is an issue for the

court to decide as a matter of law. *Baker v. Fla. Nat. Bank*, 559 So. 2d 284, 287 (Fla. 4th DCA 1990). Here, the SAC fails to allege facts sufficient to plausibly meet the extremely high standard of "outrageous conduct."

As for negligent infliction of emotional distress, the elements required to allege a claim under Florida law are: "(1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by a psychological trauma; the plaintiff mut be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person." *Corbin v. Prummell*, 655 F.Supp.3d 1143, 1166-67 (M.D. Fla. 2023) (*quoting Zell v. Meek*, 665 So.2d 1048, 1054 (Fla. 1995). Clearly, Plaintiff has not alleged any facts to support such a claim.

Accordingly, Count VII for Intentional Infliction of Emotional Distress should be dismissed.

### 5.  Government liability

In both Count V and Count VI, Plaintiff purports to bring claims for relief based on theories of municipal liability established by *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) (municipality can be found liable under §1983 only where the municipality itself causes the constitutional violation at issue) and *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) (municipality can only be liable under § 1983 for failure to train where its failure to train reflects deliberate indifference to the constitutional rights of its inhabitants). Because Plaintiff sued each Defendant in their individual capacity and did not name any governmental entity as a defendant, these theories of liability are inapplicable. Accordingly, Counts V and VI should be dismissed.

### 6.  Criminal Statutes

And lastly, Plaintiff cites to 18 U.S.C. §§ 241 and 242 at various places throughout the SAC. (*See e.g.,* Specific Facts of Conspiracy Heading, ¶¶34, 52, 73). To the extent Plaintiff is seeking relief under these statutes, such claims should be dismissed because both statutes are criminal statutes that do not create a private right of action. *See e.g., Paletti v. Yellow Jacket Marina, Inc.,* 395 Fed. Appx 549, 552 & n. 3 (11th Cir. 2010).

## IV.   Conclusion

Accordingly, Defendants' motions to dismiss (Docs. 46 and 68) should be **GRANTED**. Plaintiff's Second Amended Complaint (Doc. 39) should be dismissed. Plaintiff should be permitted to file an amended pleading that corrects the pleading deficiencies discussed above, and that is limited in scope to a Fourth Amendment claim for unlawful detention against the SCSO Detectives. The undersigned is expressing no opinion as to the viability of this claim; simply, finding that given the evolving arguments raised in the papers and the incorporated video footage, Plaintiff could plausibly state a claim on this limited issue.

Recommended in Ocala, Florida on December 4, 2024.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy