UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES F. LEWIS,

     Plaintiff,

v.                            Case No. 5:24-cv-00013-MMH-PRL

DETECTIVE JOHN KNIGHT
and DETECTIVE SHANNON VOSS,

     Defendants.

_____/

## MOTION TO DISMISS THIRD AMENDED COMPLAINT BY DEFENDANTS VOSS AND KNIGHT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Voss and Knight of the Sumter County Sheriff's Office ("SCSO Defendants") move to dismiss the Third Amended Complaint [Doc. 85] for failing to state a claim upon which relief can be granted. As grounds therefore, the SCSO Defendants state:

1.    *Pro se* Plaintiff James F. Lewis initiated this lawsuit with the filing of a Complaint on January 8, 2024. [Doc.1].

2.    Following the dismissal of two prior iterations of Plaintiff's Complaint on the grounds they constituted impermissible shotgun pleadings, Plaintiff filed a Third Amended Complaint on February 25, 2025 [Doc. 85].

3.    Plaintiff's Third Amended Complaint brings a § 1983 Claim under the Fourth Amendment for Unlawful Detention. [*Id.*]

4.      Plaintiff's Third Amended Complaint relates to Plaintiff being issued a trespass warning at The Villages-Sumter County Service Center on May 7, 2021, by the Wildwood Police Department, where the entirety of the events were captured by his own video footage and incorporated into his Third Amended Complaint.

5.      He seeks to hold the SCSO Defendants liable for a violation of his Fourth Amendment rights during the time they first responded to the scene and turned the investigation over to the Wildwood Police Department, claiming he was unlawfully detained by the SCSO Defendants without reasonable suspicion he had committed a crime.

6.      However, Plaintiff's own allegations belie his claim. Plaintiff alleges a Sumter County employee called the SCSO to report a trespass. [*Id.* ¶ 12]. Plaintiff then alleges Detective Voss responded and informed Plaintiff an employee wanted him trespassed. [*Id.* ¶ 13]. Then, Plaintiff alleges that after he left the building from which he was trespassed, he attempted to re-enter the public building. [*Id.* ¶ 16].

7.      Not only do these facts fail to state a claim for unlawful detention, but Plaintiff admits to attempting to commit a crime.

8.    The incorporated video footage further shows that the Plaintiff did not suffer a constitutional violation, and to whatever extent he did, the SCSO Defendants are entitled to qualified immunity.

9.    The alleged unlawful detention by the SCSO Defendants, through the incorporated video footage, lasted exactly 63 seconds, from the time Detective Knight told Plaintiff he was being detained, [Exhibit 1; 23:04-23:06; "Plaintiff: Am I being detained? Detective: Yes."], to when Detective Knight told him he was free to leave and began shooing him away from the scene [Exhibit 1; 24:05-24:09; Plaintiff: "So, I'm being . . .? Detective Knight: No, you can leave. You're welcome to leave."]

10.    To the extent Plaintiff was even detained for 63 seconds, the SCSO Defendants had at least reasonable suspicion a crime had been or was about to be committed.

11.    They received a call about Plaintiff "causing a scene," and upon their initial contact with Plaintiff, an eyewitness complained to Detective Voss that Plaintiff was "harassing everyone" and that the eyewitness "felt very uncomfortable with [Plaintiff being there]." [Exhibit 1, 18:56-19:21].

12.    Plaintiff was then advised on at least three separate occasions [Exhibit 1; 19:38-19:54; 20:36-20:39; 21:18-21:22] that he was being trespassed, and yet remained in the building, objecting to being trespassed from public property.

13.     Not only that, after finally leaving the building to receive the CAD number he had requested, Plaintiff attempted to re-enter The Villages-Sumter County Service Center, before being blocked by Detective Knight. [Exhibit 1, 22:34-22:38].

14.     Plaintiff remained on the property, mere feet from the entrance to the building, continuing to argue with the SCSO Defendants after he had already told them he intended to re-enter.

15.     As such, the SCSO Defendants had reasonable suspicion Plaintiff had committed, was committing, or was about to commit a crime, including but not limited to the crimes of disorderly conduct, stalking, and/or trespass after warning. Therefore, Plaintiff's 63-second detention by the SCSO Defendants was lawful.

16.     Even if the SCSO Defendants lacked reasonable suspicion to detain Plaintiff for 63 seconds, they at least had arguable reasonable suspicion and are, therefore, entitled to qualified immunity.

17.     The purpose of qualified immunity is to allow government officials to carry out their duties without fear of personal liability or harassing litigation, especially by those seeking to provoke such litigation. *See James F. Lewis v. Lake County School District et al.*, Case No. 5:22-cv-650-JA-PRL, (M.D. Fla. 2023) (dismissing Plaintiff's claims stemming from a similar First Amendment audit at The Villages Elementary School on May 13, 2021).

**WHEREFORE**, the SCSO Defendants respectfully request the claim against them be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## MEMORANDUM OF LAW

In accordance with M.D. Fla. Loc. R. 3.01, the SCSO Defendants offer the following Memorandum of Law in support of their Motion to Dismiss.

### I.    Motion to Dismiss Standard.

Fed. R. Civ. P. 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The purpose of this standard is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (U.S. 1957). A complaint that fails to contain sufficient factual matter to state a claim for relief may be subject to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court must accept the well-pled facts in a complaint as true when reviewing a 12(b)(6) motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 557.

## II.  The Court may properly consider Video Evidence under the Incorporation-by-reference Doctrine.

A district court must generally limit its consideration of a motion to dismiss to the pleadings and any exhibits attached to it. *Grossman v. Nationsbank*, N.A., 225 F. 3d 1228, 1231 (11th Cir. 2000). If the parties present, and the court considers, evidence outside the pleadings, the motion to dismiss must be converted into a motion for summary judgment. *Finn v. Gunter*, 722 F. 2d 711, 713 (11th Cir. 1984).

There are two exceptions to this rule of conversion: (1) the incorporation by reference doctrine and (2) judicial notice. *Tellabs, Inc. v. Makor Issues & Rtds., Ltd.*, 551 U.S. 308, 322 (2007). Under the incorporation-by-reference doctrine, a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) "the plaintiff refers to certain documents in the complaint," (2) those documents are "central to the plaintiff's claim," and (3) the documents' contents are undisputed. *Horsley v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2002). The Eleventh Circuit has recently held that even if a document is not referred to in the complaint, it can be considered under the incorporation-by-reference doctrine so long as the other two requirements are met. *Johnson v. City of Atlanta*, Case No. 22-11359, 2024 WL 3384936, *1 (11th Cir. July 12, 2024).

Evidence is "undisputed" in this context if its authenticity is unchallenged. *Id.* While the rule traditionally has applied to documentary evidence, the Eleventh Circuit has recently held that it applies to video footage as well. *Baker v. City of Madison, Alabama*, 67 F. 4th 1268, 1277 (11th Cir. 2023).

Plaintiff's Third Amended Complaint [Doc. 85] incorporates-by-reference unedited video evidence footage of his interactions with the SCSO Defendants, specifically by "attaching" it as an Exhibit. [Doc. 85, Exhibit 1]. It is video footage taken by him and subsequently posted on Youtube. rogue nation, *A GENTLEMANS DAY OUT PART 2 UNEDITED, THE SECOND DAY*, Youtube (May 9, 2021), https://www.youtube.com/watch?v=kxLGATV5_9Q [Exhibit 1]. Additionally, while not specifically attached by Plaintiff, a portion of Plaintiff's interactions with the SCSO Defendants were also captured by the bodycam footage from Wildwood Police Officer Angela Velez. [Exhibit 2]. Plaintiff does not dispute that the video footage is authentic[1] and that their contents are central to his claims.[2]

---

[1] The footage in Exhibit 1 is referred to as "UNEDITED" on Youtube, and Plaintiff has relied on the video footage in both Exhibits to support the prior iterations of his Complaint.

[2] It shows the entirety of his interactions with the SCSO Defendants, from when Detective Voss first speaks with Plaintiff [Exhibit 1, 18:48] to when Detective Knight tells Plaintiff to "have a good day, sir" and leaves the scene with Detective Voss [Exhibit 1, 24:53] while Wildwood Police Department officers have further discussions with Plaintiff.

Where video footage has been incorporated-by-reference, a court is not required to accept a Plaintiff's allegations as true if they are clearly contradicted by the video footage. *Pourmoghani-Esfahani v. Gee*, 625 F. 3d 1313, 1315 (11th Cir. 2010). This is because courts need not rely on "visible fiction." *Scott v. Harris*, 550 U.S. 372, 381 (2007). Instead, if the video footage that has been incorporated-by-reference in a complaint shows a plaintiff cannot state a cause of action, a motion to dismiss is properly granted. *Baker*, 67 F. 4th at 1282. As such, video footage of the incident, not simply Plaintiff's assertions within his Complaint, are properly considered on the SCSO Defendants' Motion to Dismiss.[3]

### III.    <u>The video footage confirms there were no constitutional violations and Plaintiff cannot state a claim for relief.</u>

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend IV. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains [the person's] freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007).

---

[3]    Meanwhile, the extrinsic evidence attached as Exhibits 2 and 3 should not be considered by the Court as not central, or even relevant, to Plaintiff's claim.

The Eleventh Circuit has categorized encounters between police and citizens into three types, with varying levels Fourth Amendment scrutiny: "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *U.S. v. Jordan*, 635 F. 3d 1181, 1186 (11th Cir. 2011) (*quoting United States v. Perez*, 443 F. 3d 772, 777 (11th Cir. 2006).

The first type of encounter, often referred to as a consensual encounter – does not implicate the Fourth Amendment. *Id.* "There is nothing in the Constitution which prevents [the police] from addressing questions to anyone on the streets." *United States v. Franklin*, 323 F. 3d 1298, 1301 (11th Cir. 2003). If a reasonable person would feel free to terminate the encounter, then he has not been seized. *Jordan*, 635 F. 3d at 1186. If the citizen is induced by "coercive means" or if a reasonable person would not feel free to terminate the encounter, then the encounter is no longer consensual and the citizen's Fourth Amendment rights are implicated. *Id.*

In determining whether a police-citizen encounter was consensual or whether a seizure has occurred, the Eleventh Circuit Court of Appeals considers the following factors: whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the

suspect; and the language and tone of voice of the police. *Id.* Telling a suspect he is being detained would certainly transform an otherwise consensual encounter into a detention. *See id.*

However, the Fourth Amendment does not prohibit, in appropriate circumstances and in an appropriate manner from approaching a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. *Id. citing Terry v. Ohio*, 393 U.S. 1 (1968). That is, a law enforcement officer may seize a suspect for a brief, investigatory *Terry* stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or about to be involved in, criminal activity, and (2) the stop "was reasonably related in scope to the circumstances which justified the interference in the first place." *Id. quoting Terry*, 393 U.S. at 22. "While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making that stop." *Illinois v. Wardlow, 528 U.S. 119, 123 (2000).*

A person commits the crime of trespass when he violates a warning to depart the premises by an authorized person. Fla. Stat. § 810.08(1). The issuance of a trespass warning, as contemplated by this statute, is a consensual encounter. *Henning v. Walmart Stores Inc.*, 738 F. App'x 992, 997 (11th Cir. 2018) (*citing Moore v. State*, 200 So. 3d 1290 (Fla. 2nd DCA 2016)). As such,

10

law enforcement may only issue a *verbal* warning absent "the individual voluntarily deciding to remain in order to receive a written warning." *Henning*, 738 F. App'x at 997.

Until the individual has received a warning, law enforcement lacks the authority to conduct an investigative stop or arrest for trespass. *Id.* (citing *Gestewitz v. State*, 34 So. 3d 832, 834 (Fla. 4th DCA 2010)). If the potential trespasser receives a warning and remains on the property, however, he then becomes an actual trespasser under the plain language of the statute. *Henning*, 738 F. App'x at 997. Once law enforcement has reasonable suspicion to believe a trespass has occurred, the trespasser may be detained. *See id.* (citing *A.D. v. State,* 939 So. 2d 1126, 1128 (Fla. 3d DCA 2006) (holding that an arrest for trespass was proper when the defendant had received a trespass warning but nonetheless remained on the property); *see also Watkins v. Miller,* 782 F. App'x 770, 771 (11th Cir. 2019).

In *Henning*, deputies approached plaintiff inside a Walmart and informed him that the manager had requested that he be "trespassed" from the store. 738 F. App'x at 997. The deputies then asked plaintiff to exit the store with them. *Id.* Plaintiff became noncompliant and attempted to remain in the store. *Id.* Based on plaintiff's noncompliance, the deputies took hold of plaintiff's arms and directed him through the exit. *Id.* Once the parties were outside of the store, by plaintiff's vehicle, was a written trespass warning

prepared. *Id.* The Eleventh Circuit held plaintiff did not sustain a constitutional violation because the deputies had probable cause to arrest him, specifically because plaintiff was told he was being trespassed and remained on the property. *Id.*

Here, Detective Street[4] and Detective Voss of SCSO approach Plaintiff inside The Villages-Sumter County Service Center, and politely greet him. [Exhibit 1, 18:33 –18:40]. They advise Plaintiff they were called there because for him. [Exhibit 1, 18:57–18:58]. Plaintiff asked them, "What did I do?" [Exhibit 1, 18:58–18:59]. Detective Voss responds, "I guess you're causing a scene." [Exhibit 1, 19:01–19:02]. When Plaintiff asked how he was causing a scene, Detective Voss begins to explains, "I don't know. That's why we're asking." [Exhibit 1, 19:04–19:06]. A witness then interjects and describes Plaintiff as "harassing everybody here" and that "he feels very uncomfortable with [Plaintiff] here." [Exhibit 1, 19:06–19:22]. Detective Street first informs Plaintiff he is being trespassed by a commissioner, [Exhibit 1, 19:38–19:40], and Plaintiff remains in the building, asking if he can be trespassed from property, asking which commissioner wants him trespassed, and claiming a right to perform public records requests. [Exhibit 1, 19:40–20:10].

---

[4] Not a named Defendant.

Detective Voss again tells Plaintiff they got a phone call that he was to be trespassed. [Exhibit 1, 20:37–20:40]. Plaintiff asked for the CAD number associated with the call. [Exhibit 1, 20:41–20:48]. Detective Voss asked if Plaintiff wanted to come outside so that she could provide him with the CAD number, to which Plaintiff agreed. [Exhibit 1, 20:48–20:50].[5] Plaintiff then said, "I'm coming back in." [Exhibit 1, 20:51]. Detective Voss responded, "Well, if you do after you're being warned of a trespass –." [Exhibit 1, 20:54-20:57]. Plaintiff cuts her off, and asks again who wants him trespassed. [Exhibit 1, 20:57-20:58]. She responds "Bradley Arnold," [Exhibit 1, 21:20-21:23], and Plaintiff continues to argue with her while inside the building, claiming he could not be trespassed from a public place because he was not committing a crime. [Exhibit 1, 21:23-22:08]. Detective Voss directs Plaintiff to speak with another officer outside to get additional information about the call, but Plaintiff states, "He can come in here. I'm not leaving." [Exhibit 1, 21:50-22:08].

After remaining in the building for nearly three minutes since he was first told he was being trespassed in to argue with Detectives, Plaintiff finally exists the building. [Exhibit 1, 22:08-22:12]. Upon existing the building,

_____

[5] Plaintiff now attempts to characterize this as being given unlawful directives to exit the public building." [Doc 85. ¶ 15]. Besides being controverted by the video evidence, this does not constitute a detention as a matter of law.

Plaintiff decides he wants to continue his argument back inside "where there are cameras." [Exhibit 1, 22:12-22:24]. He begins to walk back toward the building, despite being told repeatedly he was being trespassed, only to be blocked by Detective Knight. [Exhibit 1, 22:24-22:26]. Detective Angela Velez with the Wildwood Police Department, equipped with a body camera, appears on scene to handle the investigation. [Exhibit 1, 22:49, *See* Exhibit 2]. Detective Knight and Officer Velez proceed inside, at which time Plaintiff asks, "Am I being detained?" Detective Knight responds, "yes." [Exhibit 2, 00:27-00:29].[6]

Plaintiff asks, "For what law?" [Exhibit 1, 23:06-23:08]. He is told, "For trespassing." [Exhibit 1, 21:08-23:09]. Plaintiff said he was not trespassing, and Detective Voss told him, "You are at this point because you're on the property." [Exhibit 1, 23:09-23:14]. Plaintiff claimed that no one told him to leave despite Detectives Voss and Street telling him on numerous occasions he was being trespassed. [Exhibit 1, 23:14-23:16].

Less than a minute after Detective Knight tells Plaintiff he's detained as he proceeds inside, he comes back to speak with Plaintiff one more time before he turns the call over to the Wildwood Police Department. [Exhibit 1, 23:00-

---

[6] Counsel for SCSO Defendants was only aware of Plaintiff's video footage when previously moving to Dismiss, where the answer to Plaintiff's question as contained on Plaintiff's video was unintelligible to the undersigned. Officer Velez's video footage clearly depicts Knight's response to Plaintiff's question regarding whether he's being detained. However, Plaintiff remains unable to state a constitutional violation for the reasons outlined in this Motion.

23:50]. Detective Knight succinctly explains the status of the call to Plaintiff [Exhibit 1, 23:51 – 24: 05]. Plaintiff then asks, "So, I'm being –." Detective Knight promptly responds, "No, you can leave. You're welcome to leave." [Exhibit 1, 24:05-24:07]. He even "shoos" him away from the scene while telling him this. [Exhibit 1, 24:07]. The SCSO Defendants then leave the scene, and are not present for any further interactions. [Exhibit 1, 24:56].[7]

The crux of Plaintiff's claim seems to be that he was unlawfully detained for trespassing when he had not previously been advised he was trespassed in contravention of Fla. Stat § 810.08(1); *S.N.J. v. State*, 17 So. 1258, 1259 (Fla. 2d DCA 2009); *Gestewitz*, 34 So. 3d at 834-35. It is clear from the incorporated video footage that Detective Voss's encounter with Plaintiff inside the building was consensual, and therefore does not implicate the Fourth Amendment.[8] Plaintiff can only argue in good faith he was detained when he asked Detective

---

[7] Any conflicting information Plaintiff may have received after this point does not implicate Detectives Voss and Knight. Although, it should be noted Plaintiff eventually requested a written trespass warning from Wildwood Police Department, despite also never providing them with his identifying information.

[8] Regarding the factors set forth by *Jordan, 635 F. 3d at 1186,* Detective Voss never blocked or impeded Plaintiff's path while inside the building. She never obtained any of Plaintiff's identifying information, much less retained his identification. Plaintiff had clearly done research and was well-versed in his constitutional rights prior to this encounter. Only two Sumter County deputies has interacted with Plaintiff at the time. Detective Voss never displayed her weapon, physically touched Plaintiff, and her language and tone of voice was nothing but polite and professional.

Knight whether he was being detained, and Detective Knight answered in the affirmative.

However, incorporated video footage shows prior to that interaction, SCSO Defendants believed they were responding to some sort of disturbance within a government building. They told Plaintiff the call came from within the Wildwood Police Department's jurisdiction, but they responded because they were closer, indicating they believed the call could have been serious. While they merely witnessed Plaintiff walking down the hall while recording, an eyewitness approached and informed them that Plaintiff had been "harassing everyone [there]" and that he felt very uncomfortable with Plaintiff being there, specifically with his sister being present." Based on the nature of the call and the eyewitness complaint, the SCSO Defendants already had reasonable suspicion to detain Plaintiff determine whether Plaintiff had committed or was about to commit a crime such as disorderly conduct,[9] assault,[10] or stalking,[11] or if he was simply being "annoying." [Exhibit 1, 19:06-19:33].

---

[9] Florida law defines disorderly conduct as acts of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them. Fla. Stat. § 877.03.

[10] An assault is "an intentional, unlawful threat by word or act to do violence . . . coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such person that such violence is imminent." Fla. Stat. § 784.011.

[11] "A person who willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person commits the offense of stalking . . ." Fla. Stat. § 784.048(2).

However, Plaintiff was then advised no less than three times by Detectives Voss and Street he was being trespassed, but he continued to be argumentative with Detectives and would not immediately vacate the premises. Plaintiff eventually exited the building in order to receive the CAD number he had requested, only to immediately attempt to re-enter the building form which he was trespassed. The only reason he did not go back in is because Detective Knight stepped in front of him. Plaintiff then remained on the property, mere feet from the entrance to the building.

Like in *Henning*, the SCSO Defendants had reasonable suspicion to detain Plaintiff because he had continued to remain in the building, and then on the property, after receiving verbal notice of the trespass. In fact, the facts of this case are even more egregious than *Henning* because Plaintiff attempted to re-enter the building before Detective Knight blocked his entry. Put differently, he attempted to commit a crime right in front of them.

This is not a case where Plaintiff was detained for a trespass without notice. And because of the incorporated video footage, the Court need not accept such allegations as true. Detectives Knight and Voss had reasonable suspicion, or even probable cause, that Plaintiff "was involved in, or about to be involved in, criminal activity" when they repeatedly told him he was being trespassed from a building, and he would not leave, only to witness him try to re-enter the building after he left.

Plaintiff cannot make out a constitutional violation against the SCSO Defendants. The Fourth Amendment protects against *unreasonable* seizures, not his 63-second detention that was supported by not just reasonable suspicion that Plaintiff was involved in, and was about to be involved in, a trespass, but even probable cause. A commonsense review of the video footage shows Plaintiff went to the Tax Collector's Office with the intent to provoke grounds for a lawsuit;[12] however, these plans were thwarted by the poise and professionalism of Deputies Voss and Knight. As such, Plaintiff's Third Amended Complaint should be dismissed.

## IV. The SCSO Defendants are entitled to qualified immunity because they had arguable reasonable suspicion to detain him.

Public officials acting within their discretionary authority enjoy qualified immunity from civil damages when their conduct does not violate a constitutional violation that was clearly established at the time of the challenged action. *Land v. Sheriff of Jackson Cnty. Fla.*, 85 F.4th 1121, 1126 (11th Cir. 2023). To be entitled to qualified immunity, an officer must first

---

[12] "First Amendment auditors" have been described as "individuals who film governmental employees in the course of their duties in the hopes of catching them violating someone's constitutional rights... (m)any have been linked to the anti-government sovereign citizens, a movement labeled as a top domestic terrorism threat by the FBI because of the way in which they go about their 'audits,' harassing city and government employees." *Jaffe, Caution Social Media Cyber Bullies: Identifying New Harms and Liabilities*, 66 Wayne L. Rev. 381 (2021).

show he or she was acting within the scope of discretionary authority when the allegedly unlawful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

There is no question the SCSO Defendants were performing a discretionary function with respect to the challenged actions in this case (i.e. responding to a disturbance call, making contact with Plaintiff as the subject of the call, and turning the investigation over to Wildwood Police, as depicted by the video. *Ellison v. Hobbs,* 786 F. App'x 861, 873-74 (11th Cir. 2019) (describing officers' response to a call as "classic police activity"). With this requirement met, the burden shifts to Plaintiff to show qualified immunity is not appropriate. *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003).

The touchstone of qualified immunity is that officers be on notice their conduct is unlawful before being held personally liable for a constitutional violation. *Garcia v. Casey*, 75 F. 4th 1176, 1186 (11th Cir. 2023). Therefore, if a plaintiff has shown a governmental official, acting within his discretionary authority, committed a violation of a constitutional right, he must then show that the right was clearly established at the time of the alleged misconduct. *Melton v. Abston*, 841 F. 3d 1207, 1221 (11th Cir. 2016). The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful

in the situation he confronted." *Plowright v. Miami Dade Cnty.*, 102 F. 4th 1358, 1366 (11th Cir. 2024).

"A law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity." *Jackson v. Sauls*, 206 F.3d 1156, 1165-66 (11th Cir. 2000). "When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer has 'arguable' reasonable suspicion to support an investigatory stop." *Id.* If the officers have arguable reasonable suspicion, then "their violation of the law was not clearly established." *Edger v. McCabe*, 84 F. 4th 1230, 1236 (11th Cir. 2023). At the motion-to-dismiss stage, to determine whether officers had arguable reasonable suspicion, courts must accept the depiction of incorporated-by-reference video footage and analyze whether "a reasonable officer could have believed the [stop] comported with the Fourth Amendment." *See Meshal v. Comm'r*, 117 F.4th 1273, 1287 (11th Cir. 2024); *see Patrick v. Graham*, 2024 U.S. Dist. LEXIS 212150 (M.D. Fla. November 20, 2024).

For the same reasons outlined above as to why the SCSO Defendants had reasonable suspicion for Plaintiff's alleged detention, they certainly had arguable probable cause, thus entitling them to qualified immunity. The SCSO Defendants were called to a disturbance he was causing. They were then told by an eyewitness he was harassing people. They witnessed him fail to leave a

building from which he was being trespassed. The SCSO Defendants heard him say he intended to re-enter the building from which he was trespassed. And then the SCSO Defendants watched him attempt to re-enter the building, having to "restrict" him from doing so. [Doc. 85, ¶ 16].

Plaintiff committed a crime, told the SCSO Defendants he was going to commit the crime again, and then attempted to commit the crime again before the SCSO Defendants prevented him from doing so. Not only would a reasonable officer believe the subsequent 63-second detention comported with the Fourth Amendment, but it would also have been a dereliction of the SCSO Defendants' duty not to do so.

## V.  **Conclusion**

The SCSO Defendants did not violate Plaintiff's constitutional rights as confirmed on the video. Even if they did, they are entitled to qualified immunity. The Third Amended Complaint should be dismissed with prejudice for failure to state a claim.[13]

## **LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), the undersigned conferred with Mr. Lewis on February 28, 2025 via e-mail. Mr. Lewis is opposed to the Motion.

---

[13] Where a plaintiff is unable to state a cause of action and further leave to amend the complaint is futile, claims should be dismissed with prejudice. *See Muhammad v. JPMorgan Chase Bank*, NA, 567 Fed. App'x 851, 853-54 (11th Cir. 2014); *Locke v. SunTrust Bank*, 484 F.3d 1343 (11th Cir. 2007).

Respectfully submitted this <u>4th</u> day of March 2025.

*/s/ Nicholas A. Lecakes*

William B. Armistead, (FBN: 88535)
Nicholas A. Lecakes, (FBN: 104771)
warmistead@coppinsmonroe.com
nlecakes@coppinsmonroe.com
jclark@coppinsmonroe.com

COPPINS MONROE, P.A.
2316 Killearn Center Blvd, Ste. 202
Tallahassee, FL 32309
Office: 850-422-2420 | Fax: 850-422-2730
ATTORNEYS FOR DEFENDANTS
VOSS AND KNIGHT

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Civil Procedure 5(b)(3), this document is being filed electronically, and service shall be through the Court's transmission facilities on all persons appearing before this Court. Additionally, a copy of the above document has been provided this <u>4th</u> day of March 2025 to Plaintiff pro se, electronic mail at mnt1n@hotmail.com.

*s/ Nicholas A. Lecakes*
