UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES F. LEWIS,

    Plaintiff,

v.                                              Case No: 5:24-cv-13-MMH-PRL

JOHN KNIGHT and SHANNON
VOSS,

    Defendants.

_____

REPORT AND RECOMMENDATION[1]

On May 7, 2021, *pro se* Plaintiff, James F. Lewis visited a governmental building in Sumter County, Florida,[2] during which he requested public records and video recorded his interactions with County employees and law enforcement. While earlier versions of the complaint asserted counts against various County employees and law enforcement, the third amended complaint is limited to one claim against Defendants Shannon Voss and John Knight, both of whom are Detectives with the Sumter County Sheriff's Office (collectively referred to as the "SCSO Defendants") for an alleged Fourth Amendment violation. (Doc. 85). The SCSO Defendants have filed a motion to dismiss (Doc. 86) and Plaintiff has filed a

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] The building houses a public library, Tax Collector's lobby and offices, Supervisor of Elections lobby and offices, County Commissioners' offices, a Veterans Assistance office, a conference room, and employee offices.

response. (Doc. 96). For the reasons discussed below, I submit that the motion to dismiss is due to be **granted.**

I. BACKGROUND

A. Third Amended Complaint (Doc. 85)

On May 7, 2021, Plaintiff went to the Sumter County government building to request public records. During his visit, a Sumter County employee called the Sumter County Sheriff's Office to report a trespassing. According to Plaintiff, he was approached by Detective Voss who advised him that an employee wanted Plaintiff trespassed from the building. Plaintiff advised Detective Voss that he was waiting for a reply from an employee about a public records request.

Plaintiff alleges that he was "given unlawful directives" by Detective Voss "to exit the public building without reasonable articulate suspicion of any criminal or illegal activity." He further alleges that his movement was restricted from re-entering the public building by Detectives Voss and Knight to inquire about his public records request. Finally, Plaintiff alleges that he was unreasonably seized and detained by Detectives Voss and Knight.

B. Video Footage

The entirety of the events was captured by Plaintiff's own video footage and expressly incorporated into his third amended complaint. Plaintiff cited a link to the original video in his third amended complaint. (Doc. 85 at 9). And then, in support of their motion to dismiss, Defendants filed a USB drive containing the "YouTube video—A Gentleman's Day Out Part 2 Unedited." (Doc. 87, Exhibit 1). This video footage, which was incorporated by reference in the third amended complaint, is properly considered by the Court as it is central to Plaintiff's claims and its authenticity is unchallenged. *See Baker v. City of Madison, Alabama,* 67

F. 4th 1268, 1277 (11th Cir. 2023) (court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if plaintiff referred to the documents in the complaint, they are "central to the plaintiff's claim," and their authenticity is unchallenged).[3]

The video footage shows that Detective Street[4] and Detective Voss of the SCSO approached Plaintiff inside the building and greeted him. (18:33 –18:44). They advised Plaintiff that they were called there for him. (18:57–18:58). Plaintiff asked them, "What did I do?" (18:58–18:59). Detective Voss responded, "I guess you're causing a scene." (19:01–19:02). When Plaintiff asked how he was causing a scene, Detective Voss explained, "I don't know. That's why we're asking." (19:04–19:06). A witness then interjected and described Plaintiff as "harassing everybody here" and that "he feels very uncomfortable with [Plaintiff] here." (19:06–19:22). Detective Street informed Plaintiff that he was being trespassed by a Commissioner, (19:38–19:40), and Plaintiff remained in the building, asking if he could be trespassed from property, asking which Commissioner wanted him trespassed, and claiming a right to perform public records requests. (19:40–20:10). Detective Voss asked Plaintiff if he was being disruptive or if someone had confronted him—she clarified that that she had just arrived and did not know what had happened. (20:12-20:30). Detective Voss again told Plaintiff that they had gotten a phone call asking for him to be trespassed. (20:37–20:40).

---

[3] The Court declines to consider the discovery materials filed by Plaintiff in support of his response to the motion to dismiss—Exhibit 2, Bradley Arnold's sworn interrogatory answers; Exhibit 3, Defendant Knight's sworn interrogatory answers; and Exhibit 4, Defendant Voss's sworn interrogatory answers. Likewise, the Court will not consider the attached email correspondence (Exhibits 5, 6, 7) and call history record from the Sumter County Sheriff's Office. (Exhibit 8). While Plaintiff attached some similar email documents to his third amended complaint, they are not central (or even relevant) to his claims, and thus, cannot be considered without converting the motion to dismiss to one for summary judgment.

[4] Detective Street is not a named defendant.

Plaintiff asked for the CAD number associated with the call. (20:41–20:48). Detective Voss asked if Plaintiff wanted to come outside to get the CAD number. (20:48–20:50). Plaintiff initially agreed to go outside but said, "I'm coming back in." (20:51-52). Detective Voss responded, "Well, if you do after you're being warned of a trespass –." (20:54-20:57). Plaintiff cut her off and asked again who wanted him trespassed. (20:57-20:58). She responded "Bradley Arnold," (21:20-21:23), and Plaintiff continued to argue with her while inside the building, claiming he could not be trespassed from a public place because he was not committing a crime. (21:23-22:08). Detective Voss explained that if he wanted the CAD number, he would need to go outside to speak with another officer who had it on his computer, but Plaintiff stated, "He can come in here. I'm not leaving." (21:13- 22:08).

Plaintiff ultimately exited the building. (22:11). Once outside, Plaintiff again stated that nobody in the building had told him to leave. (22:22-22:24). Detective Voss explained "that is why they call us" to ask you to leave and "they aren't going to come up and get confrontational with you. They are going to have us do that." (22:26-33). At which point, Plaintiff said he wanted to continue the conversation back inside "with the cameras." (22:34-22:37). Plaintiff began to walk back toward the building but was blocked by Detective Knight who told Plaintiff to stay outside for now. (22:34-22:39).

At this point, Officer Angela Velez[5] with the Wildwood Police Department, equipped with a body camera, appeared on scene to handle the investigation. (22:49-22:53). She asked Plaintiff how she could help him, and Detective Voss explained that "they are trespassing him." (22:55-22:57). Detective Knight and Officer Velez proceeded inside, at which time

---

[5] Officer Velez is not a named defendant, nor are any Officers from the Wildwood Police Department.

- 4 -

Plaintiff asked, "Am I being detained?" (23:02-23:04). It appears that Detectives Knight and Voss both responded, "yes." (23:02-23:07).[6] Plaintiff asked, "For what law?" (23:06-23:08). He is told, "For trespassing." (21:08-23:09). Plaintiff said he was not trespassing, and Detective Voss told him, "You are at this point because you're on the property." (23:09-23:14). Plaintiff again claimed that no one had told him to leave the property. (23:13-14). Detective Voss again explained that in this case it was law enforcements' job to tell him to leave. (23:14-23:20).

After conferring with Officer Velez inside, Detective Knight returned to speak with Plaintiff one more time before he turned the call over to the Wildwood Police Department. (23:50). Detective Knight explained the status of the call to Plaintiff. (23:51–24:05). He explained that the call came from within the Wildwood Police Department's jurisdiction, but the SCSO Defendants responded because they were closer. Plaintiff then asked, "So, I'm being. . ." to which Detective Knight promptly responds, "No, you can leave. You're welcome to leave." (24:05-24:09). He even used hand gestures to "shoo" him away from the scene while telling him this. (24:07). Plaintiff continued to question Detective Knight about why he was being trespassed and why he was being denied service. (24:10-24:53). The SCSO Defendants then left the scene and were not present for any further interactions between Plaintiff and the Wildwood Police Department officers. (24:56).

## II. LEGAL STANDARD

The bare minimum a plaintiff must set forth in his complaint is found in Fed. R. Civ.

---

[6] Defendants also filed footage from Wildwood Police Officer Angela Velez's body cam. (Doc. 87, Exhibit 2). Plaintiff does not dispute that the video footage is authentic and that the contents are central to his claims –as the footage depicts the same events from his video, but from a different perspective. While unclear from Plaintiff's video footage, Velez's body cam clearly shows that Detective Knight responded "yes" to Plaintiff's question "am I being detained." (00:28-00:30).

P. 8. Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has explained, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that while particularity is not required under Fed. R. Civ. P. 8, as it is under Fed. R. Civ. P. 9, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). In short, to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Iqbal* and *Twombly*. First, the court will "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Then, "where there are well-pleaded factual allegations," the court will "'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.*

(quoting *Iqbal*, 556 U.S. at 679).

In applying this two-step approach to determine the complaint's sufficiency under Rule 8 (and in turn the plausibility of the claims), the Eleventh Circuit limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Further, the Court can infer "'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682) (brackets omitted). Finally, a complaint is also subject to dismissal under Rule 12(b)(6) "when its allegations on their fact, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).

### III. DISCUSSION

In this most recent iteration of the complaint, Plaintiff asserts only one claim against the SCSO Defendants. This sole count is brought pursuant to 42 U.S.C. § 1983 for an alleged violation of the Fourth Amendment through unlawful seizure or detention.

Any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. A plaintiff may recover for a violation of his constitutional rights pursuant to § 1983 under a theory of individual liability or governmental liability. It is well established that government agents are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536

U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To establish personal liability against a government agent for a constitutional wrong the facts alleged by Plaintiff must contain sufficient allegations to show that the individual *personally participated* in the alleged constitutional violation. *See, e.g.*, *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).

There are three broad categories of police-citizen encounters for purposes of the Fourth Amendment analysis: "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests. *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006).

The first type of encounter, often referred to as a consensual encounter, does not implicate the Fourth Amendment. There is nothing in the Constitution that prevents law enforcement officers from approaching individuals on the street or in other public places and asking them questions if they are willing to listen. *United States v. Drayton*, 536 U.S. 194, 200 (2002). Indeed, "[t]he mere fact that a law enforcement officer approaches an individual and so identifies himself, without more, does not result in a seizure." *United States v. Baker,* 290 F.3d 1276, 1278 (11th Cir. 2002) (citing *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). And the simple act of police questioning does not constitute a seizure. *See Florida v. Bostick,* 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L.Ed.2d 389 (1991).

In determining whether a police-citizen encounter was consensual or whether a seizure has occurred, the Eleventh Circuit considers the following non-exhaustive factors: "whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and

the language and tone of voice of the police." *See United States v. Jordan,* 635 F.3d 1181, 1186 (11th Cir. 2011) (*quoting United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006). "The ultimate inquiry remains whether a person's freedom of movement was restrained by physical force or by submission to a show of authority." *Id.*

As for the second category of police-citizen encounters—i.e., brief seizures and investigatory detentions—the Fourth Amendment does not prohibit a police officer, "'in appropriate circumstances and in an appropriate manner [from] approach[ing] a person for purposes of investigating possibly criminal behavior even through there is no probable cause to make an arrest.'" *Id.* (*quoting Terry v. Ohio*, 392 U.S. 1, 22 (1968). That is, law enforcement may seize a suspect for a brief *Terry* stop where the officer has a reasonable suspicion that the person has committed or is about to commit a crime, and the stop "was reasonably related in scope to the circumstances which justified the interference in the first place." *Id*. (quoting Terry, 392 U.S. at 19-20). The Supreme Court has held that "if there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information." *Hayes v. Florida*, 470 U.S. 811, 816 (1985).

Here, the incorporated video footage shows that the encounter inside the government building was consensual, and thus, does not implicate the Fourth Amendment.[7] Likewise, contrary to Plaintiff's allegation, the video clearly shows that Plaintiff voluntarily went

---

[7] As the incorporate video footage depicts, two Sumter County detectives interacted with Plaintiff inside the building –Detective Voss and Detective Street (who is not a named defendant). Detective Voss's language and tone were polite, and she never blocked or impeded Plaintiff's path while inside the building. Nor did she obtain (or retain) any of Plaintiff's identifying information, display her weapon, or physically touch Plaintiff. And Plaintiff clearly had done his research and was familiar with his constitutional rights prior to the encounter. These factors all weigh in favor of finding that the encounter was consensual.

outside to get the CAD number. *See Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (a court is not required to accept a Plaintiff's allegations as true if they are clearly contradicted by video footage of the events).

This leaves the time outside the building—when Plaintiff asked whether he was being detained, and Detective Knight and Detective Voss answered in the affirmative. Even if this was a seizure within the meaning of the Fourth Amendment, the brief stop did not violate the Fourth Amendment because the SCSO Defendants had reasonable suspicion (or probable cause) that Plaintiff had, or was about to, commit the crime of trespass.

Under the Florida trespass statute, a person commits the crime of trespass when he violates a warning to depart the premises by an authorized person. Fla. Stat. § 810.08(1).[8] The issuance of a trespass warning, as contemplated by this statute, is a "'consensual encounter,' meaning that a law enforcement officer may only issue a verbal warning, or, 'if the individual voluntarily decides to remain in order to receive a written warning,' then the officer also may issue a written warning." *Henning v. Walmart Stores, Inc.,* 738 F. App'x 992, 997 (11th Cir. 2018) (quoting *Moore v. State*, 200 So. 3d 1290 (Fla. App. Ct. 2016)). "Until the potential trespasser has received a warning, the law enforcement officer lacks the legal authority to conduct an investigatory stop or arrest for trespass." *Id*. (citing *Gestewitz v. State*, 34 So.3d 832, 834 (Fla. App. Ct. 2010)). However, if the potential trespasser receives a warning and remains on the property, then he becomes an actual trespasser under the statute. *Id*. And once a law enforcement officer has reasonable suspicion or probable cause to believe

---

[8] Fla. Stat. § 810.08(1) provides:
> Whoever . . . having been authorized, licensed, or invited, is warned by the owner or lessee of the premises, or by a person authorized by the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance.

that a trespass has occurred, or will occur, she may detain the trespasser. *Id*. (citing *A.D. v. State*, 939 So.2d 1126, 1128 (Fla. App. Ct. 2006) (holding that an arrest for trespass was proper when the defendant had received a trespass warning but remained on the property).

In *Henning*, law enforcement officers approached a plaintiff inside a Walmart and informed him that the manager had requested that he be "trespassed" from the store. *Id*. at 994. The deputies asked the plaintiff to exit the store with them, but the plaintiff became noncompliant and attempted to remain in the store. *Id.* The deputies then took hold of the plaintiff's arms and directed him through the exit. Once outside, the deputies escorted him to his car. The plaintiff asked if he was being detained, and the deputies answered "yes" so that they could write a trespass warning. *Id.* The Eleventh Circuit held that the plaintiff did not sustain a constitutional violation because the deputies had probable cause to arrest him—i.e., he was told he was being trespassed, yet he remained on the property. *Id.* at 997-98

Here, like in *Henning*, the incorporated video shows that Plaintiff was advised by law enforcement several times that he was being trespassed from the building at the request of Commissioner Arnold. Despite these warnings, Plaintiff remained inside the building, arguing with Detective Voss. And once Plaintiff finally exited to obtain the CAD number, he almost immediately attempted to re-enter the building from which he had been trespassed. Under these circumstances, the SCSO Detectives clearly had reasonable suspicion (if not probable cause) to detain Plaintiff for trespass because he threatened—and actually attempted—to reenter the building after receiving notice that he was being trespassed. The Court is not required to accept as true Plaintiff's contrary allegations that he was detained for a trespass without notice where the incorporated video footage clearly contradicts that claim.

Because Plaintiff has failed to allege that the SCSO Defendants' conduct constituted a constitutional violation, the SCSO Defendants (who were indisputably performing discretionary functions) are entitled to qualified immunity. *See Wilson v. Sec'y Dep't of Corr.*, 54 F.4th 652, 660 (11th Cir. 2022) (An official performing discretionary functions "enjoys qualified immunity unless: (1) the plaintiff alleges facts establishing that the defendant's conduct violated a constitutional or statutory right; and (2) the violated right was clearly established at the time of the defendant's alleged misconduct.").

Accordingly, I submit that Defendants' motion to dismiss (Doc. 86) should be **granted** and Plaintiff's third amended complaint (Doc. 85) should be **dismissed.**

DONE and ENTERED in Ocala, Florida on July 31, 2025.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy